UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

TOBY EVANS,

    Petitioner,

v.

D.K. SISTO, Warden, *et al.*,

    Respondents.

CASE NO. 2:07-cv-00787-RSL-JLW

REPORT AND RECOMMENDATION

I.    SUMMARY

Petitioner Toby Evans is currently incarcerated at the California State Prison – Solano, in Vacaville, California. He was convicted by a jury of "kidnapping for robbery" in Contra Costa County Superior Court on August 25, 1997, and sentenced to life with the possibility of parole. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2006 denial of parole by the Board of Parole Hearings of the State of California (the "Board").[1]

---

[1] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1,

REPORT AND RECOMMENDATION - 1

Respondent has filed an answer to the petition together with relevant portions of the state court record, and petitioner has filed a traverse in reply to the answer. The briefing is now complete and this matter is ripe for review. The Court, having thoroughly considered the record and briefing of the parties, recommends the petition be denied and this action be dismissed with prejudice.

## II. BACKGROUND

The Contra Costa County Superior Court has set forth the following relevant facts:

> Petitioner along with several accomplices met at a series of meetings and planned the crime in detail. The plan was to kidnap Mr. Mayer and steal jewelry from his store. Petitioner purchased equipment to recover the ransom money and during the course of carrying out the plan gave instructions to his accomplices. On December [21], 1993, Petitioner drove his accomplices to the victims' residence and waited outside the car. Armed with firearms, the accomplices gained entry into the home where … Mr. and Mrs. Mayer were then bound with duct tape. Money, jewelry, and a safe were taken from the residence. Two of the victims' vehicles were taken as well.
>
> Mrs. Mayer was kidnapped. She was taken in her own car and later transferred to Petitioner's car. The kidnappers left a ransom note demanding $2 million from Mr. Mayer. Petitioner transported Mrs. Mayer to a garage located in another residence. There she was held captive under guard.
>
> Petitioner then went to another residence where he met up with his accomplices and divided up $150,000 worth of stolen jewelry. Three days later Petitioner instructed his accomplice to release Mrs. Mayer. She was taken to another neighborhood and released.

(Docket 1, Ex. T at 1.) Petitioner turned himself in to the police approximately a week later. (*See id.* at 6.) He was subsequently released. (*See id.,* Ex. B at 4-5; Ex. F at 12.) Approximately five months later, he committed a first degree burglary, with ten victims, three

---

2005. *See* California Penal Code § 5075(a).

REPORT AND RECOMMENDATION - 2

of whom were children. (*See id.,* Ex. T at 6.)

Petitioner pled guilty to first degree burglary on May 1, 1995, and served five years in prison. (*See id.*, Ex. B at 14.) On August 25, 1997, prior to his release, he was convicted of kidnapping for robbery in Contra Costa County Superior Court and sentenced to life with the possibility of parole. (*See id.*, Ex. D.) His minimum eligible parole date was set for August 12, 2003. (*See id.*, Ex. F at 1.) Petitioner has been incarcerated for approximately twelve years for this offense.

The parole denial which is the subject of this petition followed a parole hearing held on September 6, 2006. This was petitioner's third application, including his initial parole consideration hearing. His previous applications were also denied.[2] After denial of his 2006 application, petitioner filed habeas corpus petitions in the Contra Costa County Superior Court, California Court of Appeal, and California Supreme Court. Those petitions were unsuccessful. This federal habeas petition followed. Petitioner contends the 2006 denial by the Board violated his Fifth and Fourteenth Amendment Due Process rights. Thus, the habeas petition before this Court does not attack the propriety of the conviction or sentence, but solely challenges the Board's decision that petitioner is unsuitable for parole.

III. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the enactment of AEDPA. *See Lindh v. Murphy*, 521 U.S.

---

[2] In 2008, after this petition was filed, petitioner had a fourth parole consideration hearing. The Board denied petitioner a parole release date. His habeas corpus petition challenging that decision is currently pending before the United States District Court for the Eastern District of California in Case No. 2:08-cv-02859-FCD-DAD.

320, 326-27 (1997). Because petitioner is in the custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive basis for his habeas petition. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert. denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."). Under AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this Court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision. To make this determination, the Court may only consider the holdings, as opposed to dicta, of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). In this context, Ninth Circuit precedent remains persuasive but not binding authority. *See id.* at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be [objectively] unreasonable." *Id.* at 411.

In each case, the petitioner has the burden of establishing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). To determine whether the petitioner has met this burden, a federal habeas court looks to the last reasoned state court decision because subsequent unexplained orders upholding that judgment are presumed to rest upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

Finally, AEDPA requires federal courts to give considerable deference to state court decisions, and state courts' factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Federal courts are also bound by a state's interpretation of its own laws. *See Murtishaw v. Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713 (9th Cir. 1993)).

## IV. FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

### A. *Due Process Right to be Released on Parole*

Under the Fifth and Fourteenth Amendments to the United States Constitution, the government is prohibited from depriving an inmate of life, liberty or property without the due process of law. U.S. Const. amends. V, XIV. A prisoner's due process claim must be analyzed in two steps: the first asks whether the state has interfered with a constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

Accordingly, our first inquiry is whether petitioner has a constitutionally protected liberty interest in parole. The Supreme Court articulated the governing rule in this area in *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482 U.S. 369 (1987). *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly established' framework of *Greenholtz* and *Allen"* to California's parole scheme). The Court in *Greenholtz* determined that although there is no constitutional right to be conditionally released on parole, if a state's statutory scheme employs mandatory language that creates a presumption that parole release will be granted if certain designated findings are made, the statute gives rise to a constitutional liberty interest. *See Greenholtz*, 442 U.S. at 7, 12; *Allen*, 482 U.S. at 377-78.

As discussed *infra*, California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole

authority, he "will pose an unreasonable risk of danger to society if released from prison." Title 15 Cal. Code Regs., § 2402(a). The Ninth Circuit has therefore held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902. To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held that California Penal Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." This "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). *See also Sass*, 461 F.3d at 1127.

Because the Board's denial of parole interfered with petitioner's constitutionally-protected liberty interest, this Court must proceed to the second step in the procedural due process analysis and determine whether the procedures accompanying that interference were constitutionally sufficient. "[T]he Supreme Court [has] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)). The "some evidence" standard requires this Court to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Although *Hill* involved the accumulation of good time credits rather than release on parole, later cases have held that the same constitutional principles apply in the parole context because both situations

REPORT AND RECOMMENDATION - 7

directly affect the duration of the prison term. *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme Court in *Hill* in the parole context); *accord, Sass*, 461 F.3d at 1128-29; *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

"The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact," however. *Hill*, 472 U.S. at 456. Similarly, the "some evidence" standard is not an invitation to examine the entire record, independently assess witnesses' credibility, or re-weigh the evidence. *Id.* at 455. Instead, the standard merely ensures that an inmate's loss of parole is not arbitrarily imposed. *See id.* at 454. The Court in *Hill* added an exclamation point to the limited scope of federal habeas review when it upheld the finding of prison administrators despite the Court's characterization of the supporting evidence as "meager." *See id.* at 457.

B.  *California's Statutory and Regulatory Scheme*

In order to determine whether "some evidence" supported the Board's decision with respect to petitioner, this Court must consider the California statutes and regulations that govern the Board's decision-making. *See Biggs*, 334 F.3d at 915. Under California law, the Board is authorized to set release dates and grant parole for inmates with indeterminate sentences. *See* Cal. Penal Code § 3040 and 5075, *et seq*. Section 3041(a) requires the Board to meet with each inmate one year before the expiration of his minimum sentence and normally set a release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public, as well as comply with applicable sentencing rules. Subsection (b) of this section requires that the Board set a release

date "unless it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b). Pursuant to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release dates" which take into account the number of victims of the offense as well as other factors in mitigation or aggravation of the crime. The Board has therefore promulgated regulations setting forth the guidelines it must follow when determining parole suitability. *See* 15 CCR § 2402, *et seq*.

Accordingly, the Board is guided by the following regulations in making a determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CCR § 2402(a) and (b). Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole,

although "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 CCR § 2402(c).

In examining its own statutory and regulatory framework, the California Supreme Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board … that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *Id.*, 44 Cal.4th 1181, 1212 (2008). The court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id*. at 1204-05, 1212. As long as the evidence underlying the Board's decision has "some indicia of reliability," parole has not been arbitrarily denied. *See Jancsek*, 833 F.2d at 1390. As the California courts have continually noted, the Board's discretion in parole release matters is very broad. *See Lawrence*, 44 Cal.4th at 1204. Thus, the penal code, corresponding regulations, and California law clearly establish that the fundamental consideration in parole decisions is public safety and an assessment of a prisoner's current dangerousness. *See id.*, at 1205-06.

    C.    *Summary of Governing Principles*

By virtue of California law, petitioner has a constitutional liberty interest in release on parole. The parole authorities may decline to set a parole date only upon a finding that petitioner's release would present an unreasonable present risk of danger to society if he is

01 released from prison. Where the parole authorities deny release, based upon an adverse

02 finding on that issue, the role of a federal habeas court is narrowly limited. It must deny relief

03 if there is "some evidence" in the record to support the parole authority's finding of present

04 dangerousness. The penal code, corresponding regulations, and California law clearly support

05 the foregoing interpretation.

V. PARTIES' CONTENTIONS

Petitioner contends that the Board violated his federal due process rights by finding him unsuitable for parole based upon the gravity of his offense, an escalating pattern of criminal conduct, and an unstable social history. (*See* Dkt. 1 at 5-16.) Specifically, petitioner claims there was no evidence to support the Board's finding that he poses an unreasonable risk of danger based upon his lack of insight into his subsequent criminal behavior. (*See id.* at 16-18). Petitioner also argues that the Board's decision fails to reflect individualized consideration of the specified criteria in that it relied upon immutable factors without regard to his rehabilitation and "erroneously characterized his criminal and social history." (*See id.*, at 18-21.)

Respondent claims that petitioner does not have a constitutionally protected liberty interest in being released on parole, that the "some evidence" standard is inapplicable in this context, and that even if he does have a protected liberty interest, the Board adequately predicated its denial of parole on "some evidence." (*See* Dkt. 8 at 4-5, 7, and 11.) Accordingly, respondent argues that petitioner's due process rights were not violated by the Board's 2006 decision, and that the Contra Costa County Superior Court's Order upholding

the Board's 2006 parole denial was not an unreasonable application of clearly established federal law. (*See id.* at 11-12.)

VI. ANALYSIS OF THE RECORD IN THIS CASE

A. *Analysis*

The Board based its decision that petitioner was unsuitable for parole primarily upon his commitment offense, but also his escalating pattern of criminal behavior, unstable social history, serious disciplinary infraction, and the absence of insight into his burglary conviction. (*See* Dkt. 1, Ex. F at 68-71.) *See also* 15 CCR § 2402(b) (requiring the Board to consider a prisoner's "past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime"); 15 CCR § 2402(c)(1) (providing that a commitment offense carried out "in an especially heinous, atrocious, or cruel manner" constitutes an unsuitability factor tending to indicate unsuitability); and 15 CCR § 2402(c)(3) (providing that a prisoner's "history of unstable or tumultuous relationships with others" constitutes an unsuitability factor tending to indicate unsuitability). After considering all reliable evidence in the record, the Board concluded that evidence of petitioner's positive behavior in prison did not outweigh evidence of his unsuitability for parole. (*See* Dkt. 1, Ex. F at 71.)

With regard to the circumstances of the commitment offense, the Board concluded that the crime was carried out in an especially cruel and callous manner, with multiple victims attacked, and that it was carried out in a dispassionate and calculated manner that demonstrated a callous disregard for human suffering. (*See id.* at 68.) *See* 15 CCR § 2402 (c)(1)(A), (B), and (D). As mentioned above, petitioner was involved in an extremely well-

REPORT AND RECOMMENDATION - 12

orchestrated armed robbery of an elderly couple. The elderly female victim was subjected to three horrifying days of captivity, under guard, in a garage. Based upon the facts in the record, the Board also found that the motive was inexplicable and "incredibly trivial in relation to the offense" as petitioner's victims and the victims' family were subjected to a senseless crime for money and jewelry. (*See id*. at 68.) *See* 15 CCR § 2402(c)(1)(E). Thus, the evidence of the circumstances surrounding petitioner's commitment offense, including his behavior before, during, and after the crime provide "some evidence" to support the Board's finding that the offense was carried out in an especially heinous, atrocious, or cruel manner. (*See id.*, Ex. T at 3-4.) *See* 15 CCR § 2402(b) and (c)(1).

The second factor cited by the Board to deny parole was petitioner's prior criminality and escalating pattern of criminal behavior. (*See id*., Ex. F at 70.) Although petitioner contends the Board cannot consider his subsequent burglary conviction or juvenile record (*see* dkt. 1 at 13), the applicable guidelines direct the Board to consider all relevant and reliable information, which includes a prisoner's involvement in other criminal misconduct which is reliably documented. *See* 15 CCR § 2402(b). Thus, contrary to petitioner's contention, the Board properly considered petitioner's first degree burglary conviction as well as "society's previous attempts to correct his criminality," including his juvenile probation and detention. (*See* Dkt. 1, Ex. F at 70.) The Board's findings pertaining to petitioner's prior criminality and escalating pattern of criminal behavior were therefore supported by "some evidence." (*See id.*, Ex. T at 6.)

01         The third unsuitability factor relied upon by the Board was petitioner's unstable social history. (*See* Dkt. 1, Ex. F at 70.)  An "unstable social history" is defined as a "history of unstable or tumultuous relationships with others." *See* 15 CCR § 2402(c)(3).  By contrast, a "stable social history" is defined as "reasonably stable relationships with others" and is a factor tending to show parole suitability. *See id.*, § 2402(d)(2).  There is no evidence in the record to support the Board's finding that petitioner had an unstable social history.  The evidence shows that petitioner has maintained relationships with his children, his father, his former mother-in-law, and his current wife of five years. (*See* Dkt. 1, Ex. T at 5-6.)  In examining the record, the Contra Costa County Superior Court stated that it was "troubled by the lack of evidence to support a finding that [petitioner] had unstable relationships with others" but felt "constrained" to find some evidence to support the Board's findings. (*See id.,* at 6.)  Because neither the Board's decision nor the Superior Court's Order provides any evidence of unstable or tumultuous relationships in petitioner's history, this suitability factor does not meet the "some evidence" standard.  Because the other suitability factors strongly support the Board's conclusion, the lack of support for this factor does not change the Court's recommendation, *see supra*.

        The fourth unsuitability factor cited by the Board was a serious disciplinary infraction. (*See* Dkt. 1, Ex. F at 70.)  Institutional behavior is an important factor to be considered, as it directly reflects a prisoner's rehabilitation efforts. *See* 15 CCR § 2402(c)(6).  While this October 2000 incident is petitioner's only disciplinary infraction, his possession of a proscribed razor blade constitutes evidence that he engaged in serious misconduct while in prison. (*See* Dkt. 1, Ex. T at 5)

01    Finally, the Board found petitioner had not provided any insight into his subsequent

02 armed burglary. (*See id.*, Ex. F at 71.) While acknowledging that petitioner had clearly

03 "gained insight" into the crime for which he is currently incarcerated, the Board found that he

04 "need[ed] additional time for insight into the escalating pattern of criminal behavior and

05 victimization of others as evidenced by these two … very similar crimes." (*Id.* at 71-72.) At

06 the parole hearing, petitioner, through his attorney, chose not to discuss his prior criminal

07 misconduct. (*See id.*, Ex. F at 8 and 12.) Accordingly, the Board was unable to probe into the

08 circumstances surrounding his burglary conviction or petitioner's insight regarding the same.

09 And, while the psychological report did reference the burglary conviction in the "Estimated

10 Dangerousness" section, it did not evaluate this offense. The Board therefore found petitioner

11 had not conveyed insight into this crime and recommended that he cooperate with a clinical

12 evaluation focused on the subsequent offense as well as his "violence potential in the free

13 community." (*Id.*) This finding is supported by "some evidence" in the record. (*See id.*)

14    As discussed above, it is beyond the authority of a federal habeas court to determine

15 whether evidence of suitability outweighs the circumstances of the commitment offense,

16 together with any other reliable evidence of unsuitability for parole. The Board has broad

17 discretion to determine how suitability and unsuitability factors interrelate to support its

18 conclusion of current dangerousness to the public. *See Lawrence*, 44 Cal.4th at 1212.

19 Although the Board praised petitioner's good behavior in prison, as well as his vocational,

20 educational and self-help programming, it determined that petitioner's commitment offense,

21 escalating pattern of criminal behavior, unstable social history, serious disciplinary infraction,

22 and the absence of insight into his burglary conviction, indicate that he remains an

unreasonable risk of danger to society if released on parole. Thus, contrary to petitioner's contentions, the Board's finding is supported by "some evidence," reflects an individualized consideration of the specified criteria, and properly considers changing factors, including petitioner's rehabilitation efforts, as well as immutable factors, such as the facts of the commitment offense.

B. *State Court Proceedings*

Petitioner's habeas petitions filed in the California Court of Appeal and California Supreme Court contain the same claims as his Contra Costa County Superior Court petition, and both petitions were summarily denied. (*See* Dkt. 8, Exs. 6 & 7.) Respondent states that petitioner has properly exhausted his state court remedies, and timely filed the instant petition. (*See id.* at 4.) This Court reviews the Contra Costa County Superior Court's Order upholding the Board's decision to determine whether it meets the deferential AEDPA standards, as it is the last reasoned state court decision. *See Ylst*, 501 U.S. at 803-04.

In a reasoned decision denying petitioner's request for habeas relief, the Contra Costa County Superior Court considered each of the above-mentioned unsuitability factors and found that there was some evidence in the record to support each individual finding. (*See* Dkt. 1, Ex. T at 3-6.) Because the Superior Court reasonably applied the "some evidence" standard, there is no need to reach respondent's argument that another standard applies.

VII. CONCLUSION

Given the totality of the Board's findings, there is "some evidence" that petitioner currently poses a threat to public safety, and the Contra Costa Court's Order upholding the Board's decision was not contrary to, or an unreasonable application of, clearly established

federal law, or based on an unreasonable determination of facts. I therefore recommend that the Court find that petitioner's due process rights were not violated and that it deny his petition and dismiss this action with prejudice.

This Report and Recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with this Report and Recommendation, any party may file written objections with this Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation." Failure to file objections within the specified time may waive the right to appeal the District Court's Order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). A proposed order accompanies this Report and Recommendation.

DATED this 15th day of May, 2009.

/s/ John Weinberg

JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17